**Genaro CAMPOS, Petitioner–Appellant,**

v.

**Leonard PORTUONDO, Superintendent, Shawangunk Correctional Facility, Respondent–Appellee.**

**Docket No. 02–2170.**

United States Court of Appeals,
Second Circuit.

Argued:  Jan. 13, 2003.

Decided:  Feb. 12, 2003.

Sara Gurwitch (Richard M. Greenberg, on the brief), Office of the Appellate Defender, New York, NY, for Petitioner–Appellant.

David S. Weisel, Assistant District Attorney (Robert T. Johnson, District Attorney; Joseph N. Ferdenzi, Allen H. Saperstein, Assistant District Attorneys; on the brief), Bronx County District Attorney's Office.

Before: KEARSE, B.D. PARKER, JR., Circuit Judges, RAKOFF, District Judge.*

* The Honorable Jed S. Rakoff, United States District Court for the Southern District of New York, sitting by designation.

**186**

PER CURIAM.

Petitioner-appellant Genaro Campos appeals from a judgment of the United States District Court for the Southern District of New York (Lawrence M. McKenna, *Judge* ), denying his petition for a writ of habeas corpus. The District Court granted a certificate of appealability and the issue pursued on appeal is whether the trial court's decision to give three *Allen* charges during jury deliberations was impermissibly coercive. *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). We affirm.

## DISCUSSION

Campos was tried in January 1994 in Supreme Court, Bronx County, New York for criminal possession of a firearm in violation of N.Y. Penal Law § 265.02(4). The trial was short, involving three Government witnesses whose testimony lasted less than six hours. At trial the arresting police officer testified that, while responding to a report of a fight involving Campos, he observed Campos place a gun under a car and attempt to walk away.

The jury began deliberations on the morning of January 18, 1994. Later that day, it twice submitted notes to the court, requesting readbacks of the police officer's testimony and a reiteration of (1) the elements of the offense and (2) the definition of reasonable doubt. After six hours of deliberations, the court excused the jury for the day. On January 19, the jury continued deliberations for four hours, after which it submitted a note stating, "We have come to an impass[e]!!" The court consulted with counsel and then issued its first *Allen* charge, encouraging the jury to continue deliberations but repeatedly assuring the jury that it was not required to reach a verdict.

Following further deliberation, during which the jury requested photographs and

another readback of police testimony, the jury sent a note to the court indicating that it had reached a verdict. Soon after submitting this note, however, the jury rescinded its statement, sending the court a subsequent note stating, "We are back to an impass[e]." The court ended the jury's deliberations for the day by giving a second *Allen* charge. The court again emphasized that a unanimous decision was not required and asked the jury to make "one final effort" to decide the case. Deliberations resumed the next morning, and the jury submitted another note, stating, "No amount of fu[r]ther deliberation will overcome this impass[e]." The court stated to counsel that it wished to give the jury "one final shot" and delivered a third *Allen* charge, instructing the jurors in part as follows:

> I don't intend to suggest to you that I believe the case can be resolved. I only believe that you can make an effort to resolve the case. I know you were very close last night, and that very fact alone has given me reason to hope that further efforts may be successful. If not, so be it. Just make an effort.

The jury continued deliberations and returned a guilty verdict less than an hour after the third *Allen* charge.

Campos appealed his conviction to the Appellate Division, arguing, *inter alia,* that the trial court's three *Allen* charges constituted an abuse of discretion since they had the effect of coercing the jury into returning a guilty verdict. The Appellate Division affirmed, concluding that "[i]n light of the jury's continuous deliberations, requests for readbacks and instructions, and retracted announcement that it had reached a verdict, the court properly exercised its discretion in declining to declare a mistrial and, instead, delivering several *Allen* charges." *People v. Cam-*

*pos,* 657 N.Y.S.2d 49, 50, 239 A.D.2d 185, 185 (1st Dep't 1997) (citations omitted). Campos unsuccessfully sought leave to appeal to the New York Court of Appeals. *Id., lv. denied,* 90 N.Y.2d 902, 663 N.Y.S.2d 514, 686 N.E.2d 226 (1997).

In August 1998, Campos filed a petition for a writ of habeas corpus, raising a number of issues including a claim that the trial court's three *Allen* charges were impermissibly coercive. The Magistrate Judge to whom the petition was referred recommended its dismissal on the ground, among others, that "the state court's judgment upholding Campos' conviction did not represent an 'unreasonable application' of Supreme Court precedent prohibiting jury coercion or an unreasonable refusal to extend existing Supreme Court precedent." *See* 28 U.S.C. § 2254(d). The District Court adopted the Magistrate Judge's recommendations and dismissed the petition but granted a certificate of appealability.

On appeal, Campos's principal contention is that the Appellate Division failed properly to apply the analysis required by *Lowenfield v. Phelps,* where the U.S. Supreme Court instructed that the propriety of an *Allen* charge must be evaluated "in its context and under all the circumstances." 484 U.S. 231, 237, 108 S.Ct. 546, 98 L.Ed.2d 568, 98 L.Ed.2d 568 (1988) (internal quotation marks omitted). Specifically, Campos contends that the Appellate Division failed to take into account circumstances indicating coercion, such as the case's simplicity, the language of the second and third *Allen* charges, and the brevity of the deliberations following the third *Allen* charge.

Under 28 U.S.C. § 2254(d)(1), we assess whether the Appellate Division's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The Supreme Court has held:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ We are not persuaded that the Appellate Division misapplied Supreme Court precedent. As the Supreme Court noted in *Early v. Packer,* "Compliance with *Lowenfield* does not demand a formulary statement that the trial court's actions and inactions were noncoercive individually and cumulatively." —— U.S. ——, ——, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (per curiam) (internal quotation marks omitted). Although not specifically citing *Lowenfield,* the Appellate Division, in its analysis of the factors surrounding the three *Allen* charges, cited *Plummer v. Rothwax,* a case acknowledging that a trial court's decision whether or not to give an *Allen* charge must be evaluated "considering the circumstances of the ... case." *People v. Campos,* 657 N.Y.S.2d at 50, 239 A.D.2d at 185 (citing 63 N.Y.2d 243, 250–51, 481 N.Y.S.2d 657, 471 N.E.2d 429, 434–35 (1984)). Thus, the Appellate Division implicitly identified and correctly applied a standard of analysis "not contrary to" or an unreasonable application of *Lowenfield.* *See, e.g., Elliott v. Williams,* 248 F.3d 1205, 1212–13 & n. 8 (10th Cir.2001) (indicating that a state court's reference to another state court decision involving a totality-of-the-circumstances standard suf-

ficiently recognizes Supreme Court precedent).

 Further, as the *Early* Court explained, even if we, as a matter of first impression, felt that "there was jury coercion here," as long as it was "at least reasonable [for the state court] to conclude that there was not ... the state court's determination to that effect ·must stand." 123 S.Ct. at 366. In concluding that there was no coercion, the Appellate Division relied, *inter alia,* on the fact that, given that the jury members had at one point actually reached a verdict (albeit one they soon after retracted), the trial judge need not take at face value their subsequent conclusory statements of inability to reach a verdict but could, instead, urge them to engage in further deliberations through an additional *Allen* charge. Such analysis was not unreasonable.

### CONCLUSION

For the foregoing reasons, we affirm the District Court's denial of Campos's petition for a writ of habeas corpus.